UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **RODOLFO GONZALEZ RODRIGUEZ,** § | |
| Petitioner, § | |
| § | |
| VS. § | CIVIL ACTION NO. 5:25-CV-00191 |
| § | |
| **PAMELA JO BONDI, TODD LYONS,** § | |
| **KRISTI LYNN NOEM, MIGUEL** § | |
| **VERGARA, and NORBAL VASQUEZ,** § | |
| Respondents. § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Rodolfo Gonzalez Rodriguez is currently in federal custody at the Rio Grande Processing Center in Laredo, Texas. (Dkt. No. 1 at 3; Dkt. No. 11 at 1).[1] Before the Court is Petitioner's Petition for Writ of Habeas Corpus, (Dkt. No. 1), and Federal Respondents' Response to the Petition for Writ of Habeas Corpus and Motion to Dismiss and, Alternatively, Motion for Summary Judgment, (Dkt. No. 11). The issue before the Court is whether Petitioner, an undocumented immigrant, is entitled to a bond hearing before an Immigration Judge. This Court is not considering whether Petitioner should be released on bond, as that decision lies with an Immigration Judge.

### I. BACKGROUND

Petitioner, a citizen of Mexico, challenges his ongoing detention without a bond hearing and Respondents' statutory authority to detain him. Petitioner was detained on or about October 3, 2025, when the Petitioner attempted to cross the immigration checkpoint near Encinal, Texas. (Dkt. No. 1 at 5). During his encounter with Customs and Border Patrol (CBP) agents, the Petitioner admitted to being a citizen of Mexico without a lawful right to remain in the United States. (Dkt. No. 11 at 2).

The Petitioner was processed for an arrest warrant under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or

---

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General. (*Id.*).

Upon further review, the CBP agents discovered that the Petitioner had been previously subject to removal proceedings that were terminated by an immigration judge on March 23, 2023. (*Id.* at 3). The Petitioner was released on bond while his removal proceedings were ongoing. (*Id.*). On April 7, 2023, the Department of Homeland Security (DHS) filed a Notice of Appeal of the immigration judge's decision to terminate removal proceedings. (*Id.*). This appeal remains pending before the Board of Immigration Appeals (BIA). (*Id.*).

The Petitioner has been detained since his arrest on October 3, 2025. He has no criminal history. (*Id.*). As of the time his detention began, the Petitioner had been residing in the United States for at least ten years.

Petitioner filed a petition for a writ of habeas corpus, asserting that he is entitled to a bond hearing under 8 U.S.C. § 1226(a). (Dkt. No. 1). He requests, among other things, that the Court issue an order requiring the Respondents to release him or, alternatively, provide a bond hearing. (Dkt. No. 1 at 2). Respondents make two motions in response. (Dkt. No. 11). First, they move to dismiss the petition because Petitioner failed to exhaust his administrative remedies, depriving the Court of jurisdiction. (*Id.* at 3). Second, Respondents move for summary judgment, arguing that Petitioner is lawfully subject to mandatory detention under 8 U.S.C. § 1225(b).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) Motion to Dismiss

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). When reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a district court may dismiss the action based upon: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Williams v. Wynne,* 533 F.3d 360, 365 n.2 (5th Cir. 2008). The party who invokes federal court jurisdiction bears the burden of showing that

jurisdiction is proper. *Hartford Ins. Group v. Lou–Con Inc.,* 293 F.3d 908, 910 (5th Cir. 2002).

### B. Rule 56 Motion for Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record as a whole to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, the Court must view the facts in the light most favorable to the nonmoving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019).

### C. 28 U.S.C. Section 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

### D. 8 U.S.C. Sections 1226 and 1225

Section 1226 provides the general process for arresting and detaining noncitizens who are present in the United States and eligible for removal. 8 U.S.C. § 1226. The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). "[T]he Attorney General may release an alien detained under § 1226(a) on bond or conditional parole." *Jennings*, 583 U.S. at 288 (citation modified). But "aliens who are covered by § 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (quoting § 1225(b)(2)(A)). Hence, "noncitizens detained

3 / 14

under Section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under Section 1226(a) are entitled to a bond hearing before an [Immigration Judge (IJ)] at any time before entry of a final removal order." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025).

### III. DISCUSSION

Respondents first move to dismiss the petition on the basis that Petitioner has not exhausted his remedies. Respondents also argue that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A), and that his petition should be dismissed for that reason. Before addressing the merits of the motion to dismiss and the underlying petition, the Court considers the effect of a recently certified class.

#### A. Effect of the *Maldonado Bautista* Class Action

On November 25, 2025, a district court in the Central District of California certified a nationwide class under Rule 23(b)(2). *Maldonado Bautista v. Santacruz, Jr.*, No. 5:25-CV-1873, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025) (certifying a class including "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination"). That court previously granted petitioners partial summary judgment and then "extend[ed] the same declaratory relief granted to Petitioners to the Bond Eligible Class as a whole." *Id.*; *Maldonado Bautista v. Santacruz, Jr.*, No. 5:25-CV-1873, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025). The declaratory relief granted states that Respondents' new interpretation and mandatory detention policy under Section 1225(b)(2) is unlawful. *Maldonado Bautista*, 2025 WL 3289861, at *5, 11.

Respondents and Petitioner agree that Petitioner is a class member. (Dkt. No. 20 at 1; Dkt. No. 19 at 2). Respondents assert that this action should be dismissed because certification of a Rule 23(b)(2) class precludes individual relief under *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988). (Dkt. No. 19 at 2). Alternatively, Respondents contend that the Court is not bound by any judgment in *Maldonado Bautista* because there is no final judgment. (*Id.* at 3). Petitioner argues that

Respondents are bound by *Maldonado Bautista* and must provide Petitioner with a bond hearing. (Dkt. No. 20 at 3–5).

First, *Gillespie* does not warrant dismissal of this case. In *Gillespie*, the Fifth Circuit held that "[s]eparate individual suits may not be maintained for equitable relief from allegedly unconstitutional Texas prison conditions." 858 F.2d at 1103. The justification behind barring individual relief was prudential: allowing members in the class to seek individual relief "would require other courts to become familiar with the *Ruiz* decree, the current problems of the Texas prison system, and the possible disruptive effect of the exercise of equitable powers over matters covered by the *Ruiz* decree." *Id.* Additionally, barring individual claims was warranted because individual court orders granting piecemeal relief could have hindered the *Ruiz* court's ability to enforce and modify its existing degree. *Id.*

The same prudential concerns do not apply here. First, as Petitioner argues, *Gillespie* has not been applied to dismiss a Section 2241 habeas petition. *Id.* at 1102. Second, the Fifth Circuit's reasoning that inmate plaintiffs across Texas must seek individual relief within the class action relied on the class-action court's ability to modify relief it had already granted, the burden on other courts to become familiar with Texas prisons and the existing decree, and the reluctance to allow various district courts to issue new decrees that would bind the Texas prison system. *See id.* at 1103. Here, the *Maldonado Bautista* court has granted declaratory relief that applies to the entire class. *Maldonado Bautista*, 2025 WL 3288403, at *9. Because Petitioner's claims are based on statutory interpretation, there is no need for courts to consider complicated facts like the various prison conditions in *Gillespie*. Additionally, individual relief granted here does not limit the *Maldonado Bautista* court's ability to enforce or modify its existing order. For these reasons, *Gillespie* does not warrant dismissal.

Second, Respondents are currently contesting whether the *Maldonado Bautista* court has entered a final judgment. Petitioner contends that Respondents are bound and that this Court should enforce *Maldonado Bautista*. (Dkt. No. 20 at 5). Respondents counter that there is no final judgment and that this Court is not bound. (Dkt. No. 19 at 3). According to the docket in *Maldonado Bautista*, the Court is currently receiving

briefing on a motion from the class members for clarification of the court's order. (*Maldonado Bautista v. Santacruz, Jr.*, No. 5:25-CV-1873, Dkt. Nos. 87, 89).

In each of these scenarios, the outcome of the petition in this instant case is the same: Petitioner is entitled to a bond hearing. The Court finds that Petitioner is detained unlawfully under Section 1225(b)(2)(A) based on the independent grounds stated below, but the Court also finds that Petitioner is entitled to relief under the orders in *Maldonado Bautista*. *See Romero Santuario v. Bondi*, No. 25-4296, 2025 WL 3469577, at *2 (D. Minn. Dec. 2, 2025); *Mendes v. Hyde*, No. 25-CV-627, slip op. at 6 (D.R.I. Dec. 5, 2025).

### B. Petitioner Is Not Required to Exhaust Administrative Remedies

Respondents move to dismiss the petition for failure to exhaust administrative remedies. (Dkt. No. 11 at 8). Petitioner contends that exhausting his remedies would be futile under the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which held that IJs do not have jurisdiction to consider bond requests from detained noncitizens who are present in the United States without admission. (Dkt. No. 1 at 5).

Respondents argue that Petitioner must at least request a bond hearing. First, they contend that federal prisoners must exhaust all administrative remedies before filing a Section 2241 habeas petition. (Dkt. No. 11 at 8). Though, as Respondents acknowledge, the Fifth Circuit carves out an exception to exhaustion based on patent futility. (*Id.* at 10) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)) (noting that the exception should "apply only in extraordinary circumstances"). Respondents argue that the administrative remedy here is not patently futile. (*Id.* at 9).

This Court, along with others, has previously analyzed exhaustion of administrative remedies prior to filing Section 2241 habeas petitions involving the denial of bond hearings. *Padron Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950096, at *6 (S.D. Tex. Oct. 3, 2025); *Perdomo Flores v. Noem*, No. 5:25-CV-162, slip op. at 5 (S.D. Tex. Nov. 25, 2025). As noted in those cases, there is no statutory requirement to exhaust remedies for alien detention claims; rather, "[u]nder the INA exhaustion of administrative remedies is only required by Congress for appeals on final orders of removal." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337, 2025 WL 2691828, at *6 (W.D. Tex. Sep. 22, 2025) (quoting *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 904 (S.D. Tex. 2007));

*see also* 8 U.S.C. § 1252(d)(1) ("A court may review *a final order of removal* only if . . . the alien has exhausted all administrative remedies." (emphasis added)).

Here, Petitioner is not asking the court to review a final removal order, so there is no statutory requirement to exhaust. Aside from statutory requirements, federal prisoners generally must exhaust administrative remedies before filing a Section 2241 habeas petition. *See, e.g.*, *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012). However, exhaustion may be waived "where the attempt to exhaust such remedies would itself be a patently futile course of action." *Id.* (citing *Fuller*, 11 F.3d at 62).

Because the BIA has held that IJs lack jurisdiction to hear claims like Petitioner's, *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 217, it would be patently futile to require him to seek relief in immigration court on this issue. Respondents argue that an administrative body's unlikeliness to rule in Petitioner's favor does not establish futility. (Dkt. No. 11 at 9). However, futility here does not turn on whether an IJ would be likely to grant bond or award relief. Rather, Petitioner's request would be futile because an IJ would not have the authority to hear his claim under the BIA's current caselaw.

The Court finds that, to the extent that prudential exhaustion of remedies would be required, it should be waived in this case. Therefore, Respondents' motion to dismiss based on failure to exhaust remedies is **DENIED**.

### C. Petitioner Is Entitled to a Bond Hearing Under Section 1226(a)

Respondents also move to dismiss the petition on the basis that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225. (Dkt. No. 11 at 10). The primary issue here is whether Petitioner has been erroneously categorized as a detainee subject to 8 U.S.C. § 1225(b)(2), which prescribes mandatory detention during removal proceedings, or if he is subject to 8 U.S.C. § 1226(a), which provides for discretionary detention and a bond hearing. Petitioner contends that he is entitled to a bond hearing under Section 1226(a), but Respondents argue that he is subject to mandatory detention under Section 1225(b)(2), and therefore, not entitled to a bond hearing.

The difference in interpretation stems from the Government's new interpretation of immigration detention authority. (See Dkt. No. 1 at 8–9). The Department of Homeland Security (DHS) and the Department of Justice (DOJ) released interim

guidance on July 8, 2025, announcing a new legal position on detention and release authorities. (*Id.*). The guidance interprets Section 1225 as applying to the detention of all "applicants for admission," including all noncitizens who have not been admitted, whether or not they arrive at a port of entry. (*See id.*).

The Court has considered this issue in similar cases.[2] The significant majority of district courts to consider this issue, including this Court, have concluded, "the statutory text, the statute's history, Congressional intent, and [Section] 1226(a)'s application for the past three decades" support application of Section 1226. *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (quoting *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sep. 9, 2025) and citing *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337, 2025 WL 2691828, at *7 (W.D. Tex. Sep. 22, 2025)); see also *Rodriguez v. Bostock*, No. 3:25-CV-5240, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sep. 30, 2025) (collecting cases).

Respondents ask the Court to reconsider its interpretation of the statute. (Dkt. No. 11 at 17). Specifically, Respondents direct the Court to three recent district court decisions that accept Respondents' interpretation. *Vargas Lopez v. Trump*, No. 8:25-CV-00526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, No. 3:25-CV-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Pena v. Hyde*, 2025 WL 2108913 (D. Mass. July 28, 2025).

The Court is not persuaded by the analysis that these cases and Respondents' arguments rely on. The Court will not repeat in detail the "well-reasoned analyses" supporting its interpretation of the statute. See *Perdomo Flores*, No. 25-CV-162, slip op. (Nov. 25, 2025); *Buenrostro-Mendez*, 2025 WL 2886346, at *3 (citing *Chogllo Chafla v. Scott*, No. 2:25-CV-437, 2025 WL 2688541, at *5 (D. Me. Sep. 21, 2025)). But the Court will provide a concise summary of its statutory interpretation, legislative history, and the relevant persuasive authority.

### 1. *Statutory Interpretation*

---

[2] *See, e.g.*, *Padron Covarrubias*, 2025 WL 2950097; *Ortiz-Ortiz v. Bondi*, No. 5:25-CV-132, slip op. (S.D. Tex. Oct. 15, 2025); *Perdomo Flores*, No. 25-CV-162, slip op. (Nov. 25, 2025); *Leon Morales v. Warden of the Rio Grande Processing Center*, No. 5:25-CV-141, slip op. (S.D. Tex. Dec. 11, 2025).

Statutory interpretation "begins with the statutory text, and ends there as well if the text is unambiguous." *Kovac v. Wray*, 109 F.4th 331, 335 (5th Cir. 2024) (quoting *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). In evaluating the relevant statute here, the Court recognizes that the BIA and some district courts have found that the text unambiguously supports Respondents' interpretation of Section 1225. *Hurtado*, 29 I. & N. Dec. at 226; *Garibay-Robledo*, No. 1:25-CV-177, slip op. at 9; *Chavez*, 2025 WL 2730228, at *4.

However, the Court finds that the text of Section 1225 alone is not sufficiently clear to support Respondents' interpretation. As highlighted by other district courts, the statute is ambiguous on its face. *See, e.g.*, *Martinez-Elvir v. Olson*, No. 3:25-CV-589, 2025 WL 3006772, at *7 (W.D. Ky. Oct. 27, 2025) ("[T]he statutory text does not definitely answer what it means to be 'present' yet 'not . . . admitted' or 'arrive[d]' in the United States"). Additionally, the consistent interpretation of the statute over a 30-year period prior to Respondents' current interpretation undercuts the argument that the statute so clearly requires mandatory detention for Petitioner. Furthermore, as the Supreme Court has explained, "oftentimes the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, the Court must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, 576 U.S. 473, 474 (2015) (quoting *FDA v. Brown & Williamson*, 529 U.S. 120, 132 (2000)).

Here, the statutory context establishes that Section 1225 governs detention near the time of entry and Section 1226 governs detention once a noncitizen is present in the United States. *See Guerrero Orellana v. Moniz*, No. 25-CV-12664, 2025 WL 2809996, at *8 (D. Mass. Oct. 3, 2025) (quoting *Jennings*, 583 U.S. at 287, 289). This statutory scheme informs the Court's interpretation of Section 1225, which appears to govern mandatory detention for noncitizens seeking admission at the time of entry. The Court's overall interpretation of the statute aligns with this conclusion.

### 2. Legislative History

Respondents next argue that the legislative history of the Illegal Immigration Reform and Immigration Responsibility Act (IIRIRA) supports Respondents' position.

(Dkt. No. 11 at 14). Specifically, they argue that "Congress intended to ensure that it did not treat aliens who unlawfully crossed the border and evaded initial detection better than those who presented themselves at ports of entry and tried to enter lawfully" when it reformed the relevant statutory scheme. (*Id.*). They cite *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020), to argue that "Congress passed IIRIRA to correct 'an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully.'" (Dkt. No. 11 at 14– 15). Respondents also quote legislative history that Congress "intended to replace certain aspects of the [then-]current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry." (*Id.* at 14) (quoting H.R. Rep. 104-469, pt. 1, at 225).

But Respondents' argument is undermined by legislative history for Section 1226(a), *Torres*'s narrow application to removal proceedings, and the longstanding interpretation of the law without reform by Congress. First, as highlighted by another district court, IIRIRA "restates the current provisions in [its predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." *Rodriguez*, 2025 WL 2782499, at *23 (quoting H.R. Rep. No. 104-469, pt. 1, at 229). Because the predecessor statute was unchanged by IIRIRA and allowed for discretionary detention of unlawfully present noncitizens, this history supports Petitioner's interpretation.

Second, Respondents' reference to the Ninth Circuit in *Torres* is unavailing. *Torres* notes that "IIRIRA added [Section] 1225(a)(1). This provision ensures that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing *in removal proceedings* under the INA—in the position of an 'applicant for admission.'" 976 F.3d at 928 (citing 8 U.S.C. § 1225(a)(1); H.R. Rep. 104-469, pt. 1, at 225) (emphasis added). *Torres* goes on to discuss the burdens of proof in Section 1229a removal proceedings. However, neither *Torres* nor Section 1229a discuss detention authority and instead address the legal standards for applicants for admission in removal proceedings. *See Rodriguez*, 2025 WL 2782499, at *24; 976 F.3d 918; 8 U.S.C. § 1229a; *see also* 8 C.F.R. § 1003.19(d) ("custody or bond . . . shall be

separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding"). For this reason, *Torres*'s holding does not clarify Congress's intent with respect to the legislative history of the relevant statutory provisions.

Finally, the longstanding interpretation of the statutes—without reform from Congress—undercuts Respondents' argument that the statute was intended to be interpreted differently. As many courts note, Respondents' interpretation cuts against "three decades of consistent statutory interpretation." *Pizarro Reyes*, 2025 WL 2609425, at *7 (collecting cases). Longstanding interpretation without congressional amendment can show that the interpretation aligns with Congress's intent. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274–75 (1974)) ("It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'"). Congress recently amended Sections 1225 and 1226 without disturbing the specific provisions at issue. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3, 4 (2025). Without evidence of congressional amendments that would lend credence to Respondents' interpretation, their legislative history argument fails. For the reasons stated above, Respondents' arguments as to legislative history do not support that they are entitled to judgment as a matter of law.

### 3. Persuasive Authority

Respondents also argue that various persuasive authorities support their interpretation. They first cite the BIA's decision in *Hurtado*, 29 I & N Dec. 216, arguing that *Skidmore* deference imbues agency decisions with the "power to persuade, if lacking the power to control." (Dkt. No. 10 at 17) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))). Respondents also argue that the Court should not be persuaded by Petitioner's reference to out-of-circuit district court decisions as they are non-binding, pre-date *Hurtado*, and carry less weight than the agency's interpretation. (Dkt. No. 11 at 16). Respondents cite three cases supporting their interpretation. (*Id.*).

In terms of persuasive authority from other district courts, Petitioner cites roughly twenty district court decisions that support their interpretation. (Dkt. No. 1 at 14).[3] Of course, none of the decisions by other district courts are binding on this Court, and as Judge Charles Eskridge noted in his thoughtful opinion reaching an interpretation contrary to this Court, "[u]ntil such time as the Fifth Circuit takes up this issue and gives an authoritative construction, it remains incumbent upon district courts to each make their own, independent assessment." *Cabanas v. Bondi*, No. 4:25-CV-4830, 2025 WL 3171331, at *5 (S.D. Tex. Nov. 13, 2025). This Court ultimately joins the majority of other district courts in finding "the well-reasoned decisions of the many district courts that have rejected the Government's expansive view of 1225(b)(2) far more persuasive than the new BIA ruling, a ruling at odds with its prior decisions and DHS's actions over the past thirty years." *Salcedo Aceros v. Kaiser*, No. 25-CV-6924, 2025 WL 2637503, at *12 (N.D. Cal. Sep. 12, 2025). For the reasons stated above, Respondents' arguments do not support that their interpretation is correct.

**D. Remedy**

Because the Court finds that Petitioner's detention is properly construed as falling under Section 1226(a) and that he is entitled to a bond hearing, the Court grants Petitioner's petition for a writ of habeas corpus. A district court has equitable discretion in determining the appropriate remedy "as law and justice require" for unlawful detention in a habeas petition. *See Brown v. Davenport*, 596 U.S. 118, 127–28 (2022). The

---

[3] The Court recognizes that the majority of district courts to consider this issue—even after *Hurtado*—have rejected Respondents' interpretation. *See Echevarria v. Bondi*, No. CV-25-3252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Loa Caballero v. Baltazar*, No. 25-CV-3120, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); *Lopez v. Hardin*, No. 2:25-CV-830, 2025 WL 2732717 (M.D. Fla. Sep. 25, 2025); *Mariano Miguel v. Noem*, No. 25 C 11137, 2025 WL 2976480 (N.D. Ill. Oct. 21, 2025); *Barerra v. Tindall*, No. 3:25-CV-541, 2025 WL 2690565 (W.D. Ky. Sep. 19, 2025); *Maldonado de Leon v. Baker*, No. 25-3084, 2025 WL 2968042 (D. Md. Oct. 21, 2025); *Zumba v. Bondi*, No. 25-CV-14626, 2025 WL 2753496 (D.N.J. Sep. 26, 2025); *Velasquez Salazar v. Dedos*, No. 1:25-CV-835, 2025 WL 2676729 (D.N.M. Sep. 17, 2025); *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); *S.D.B.B. v. Johnson*, No. 1:25-CV-882, 2025 WL 2845170 (M.D.N.C. Oct. 7, 2025); *Rodriguez*, 2025 WL 278499; *Chogllo Chafla*, 2025 WL 2688541; *Hasan v. Crawford*, No. 1:25-CV-1408, 2025 WL 2682255 (E.D. Va. Sep. 19, 2025); *Arce v. Trump*, No. 8:25-CV-520, 2025 WL 2675934 (D. Neb. Sep. 18, 2025); *Vazquez v. Feeley*, No. 2:25-CV-01542, 2025 WL 2676082 (D. Nev. Sep. 17, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981, 2025 WL 2607924 (D. Mass. Sep. 9, 2025); *Lopez-Arevelo*, 2025 WL 2691828. *But see Chavez*, 2025 WL 2730228 (finding that the plain meaning of the statutes justifies detention under Section 1225); *Vargas Lopez*, 2025 WL 2780351 (interpreting Sections 1225 and 1226 as overlapping provisions); *Pena v. Hyde*, No. 25-11983, 2025 WL 2108913 (D. Mass. July 28, 2025).

Court finds that the specific harm Petitioner suffered—unlawful detention without a bond hearing—is remedied by granting his request for a bond hearing under Section 1226(a) and enjoining Respondents from denying bond on the basis that he is detained under Section 1225(b)(2). Given the liberty interest at stake, the Court finds that Respondents must provide Petitioner a bond hearing promptly, by the deadline ordered below.

Therefore, the Court, exercising its equitable discretion in fashioning appropriate habeas relief, further orders Respondents to immediately release Petitioner if a bond hearing is not provided by the deadline ordered below, unless and until it is determined that he should be detained pursuant to the standard set forth in 8 U.S.C. § 1226.[4] *See e.g.*, *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *10 (E.D. Mich. Aug. 29, 2025); *Velasquez Salazar v. Dedos*, No. 1:25-CV-835, 2025 WL 2676729, at *9 (D.N.M. Sep. 17, 2025); *Kostak v. Trump*, No. CV 3:25-1093, 2025 WL 2472136, at *4 (W.D. La. Aug. 27, 2025); *Lopez-Arevelo*, 2025 WL 2691828, at *13.

### IV. CONCLUSION

For the foregoing reasons, Respondents' Motion to Dismiss and, Alternatively, Motion for Summary Judgment, (Dkt. No.11), is **DENIED.** Petitioner's Petition for Writ of Habeas Corpus, (Dkt. No. 1), is **GRANTED**.

The Court **ORDERS** Respondents to provide Petitioner a bond hearing under 8 U.S.C. § 1226(a) **by December 26, 2025.** If Petitioner is not provided a bond hearing, Respondents are **ORDERED** to release Petitioner **by December 26, 2025.** If Petitioner is released, Respondents must notify his counsel of the exact time and location of release **no less than two hours** before his release.

No later than **December 29, 2025, at 5:00 p.m.,** the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding

---

[4] Petitioner challenges his detention on both statutory and constitutional grounds, including a claim that his detention violates the Administrative Procedure Act. (Dkt. No. 1 at 15). The Court "'will decline to decide the merits' of the due process claim 'given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a).'" *Buenrostro-Mendez*, 2025 WL 2886346, at *3 n. 4 (quoting *Pizarro Reyes*, 2025 WL 2609425, at *8).

Petitioner's release. The parties should also notify the Court if the Government seeks a stay of the IJ's bond decision under 8 C.F.R. § 1003.19(i).

    It is so **ORDERED**.

    **SIGNED** on December 18, 2025.

                                                 _____
                                                 John A. Kazen
                                                 United States District Judge